UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY SOLIS, | No. 20-cv-05105 (AKH) |
| Plaintiff, | |
| -against- | |
| 666 FIFTH ASSOCIATES LLC, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT 666 FIFTH ASSOCIATES LLC'S MOTION TO DISMISS THE COMPLAINT

Lisa M. Griffith
Keegan B. Sapp
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, New York 11747
(631) 247-4700
lgriffith@litter.com
ksapp@littler.com

## TABLE OF CONTENTS

**PAGE**

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    PROCEDURAL HISTORY ..................................................................... 2

III.   STATEMENT OF ALLEGATIONS AND PERTINENT FILINGS ........................ 5

IV.    ARGUMENT ...................................................................................... 11

      A.   Mr. Solis' Amended Complaint Should Be Dismissed Under FRCP Rules
       12(b)(1) and (6) For His Failure to State a Claim that Would Entitle Him
       to Relief............................................................................................ 11

          1.   Mr. Solis Released His Claims Against 666 Fifth Through a
            Settlement Agreement................................................................ 12

          2.   The Claims Asserted in Mr. Solis' Amended Complaint Are Moot
            and Should Be Dismissed ......................................................... 15

          3.   Mr. Solis Failed to Exhaust His Administrative Remedies as He
            Did Not Receive a Right to Sue from the EEOC Against 666 Fifth........ 15

      B.   The Amended Complaint Should Be Dismissed Under FRCP Rules 4,
       12(b)(4) and 12(b)(5) Because He Did Not Serve 666 Fifth with Sufficient
       Process ............................................................................................ 17

      C.   Mr. Solis Was Not 666 Fifth's Employee During the Relevant Period.............. 18

4846-7996-4657.11 / 000000-0000

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

D.     Mr. Solis' Ten-Month Delay in Requesting Relief to Serve 666 Fifth and

Filing a Duplicative Action After Filing the Initial Complaint and

Resolving the Action Warrants the Court's Reconsideration of its Order

Granting Leave to Serve the Amended Complaint ............................................. 20

**V.     CONCLUSION** .............................................................................................................. **23**

4846-7996-4657.11 / 000000-0000

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahluwalia v. St. George's Univ., LLC,*
    63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) ...............................................................17

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)...............................................................................12

*Darden v. DaimlerChrysler N. Am. Holding Corp.,*
    191 F. Supp. 2d 382 (S.D.N.Y. 2002).....................................................................17

*Dechberry v. New York City Fire Dep't,*
    124 F. Supp. 3d 131, 135 (E.D.N.Y. 2015) ...............................................12, 13, 14

*DeLuca v. AccessIT Grp., Inc.,*
    695 F. Supp. 2d 54 (S.D.N.Y. 2010).......................................................................18

*Garcia v. Coca–Cola Bottling Co. of New York,*
    1998 WL 151032, at *2 (S.D.N.Y. Mar.31, 1998) ..................................................16

*Gottesfeld v. Anderson.,*
    2020 WL 1082590, at *7 (S.D.N.Y. Mar. 6, 2020) .................................................16

*Hughes v. Lillian Goldman Family, LLC,*
    360 Fed. App'x 202, 203 (2d Cir. 2010) ................................................................14

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,*
    828 F. App'x 734, 736 (2d Cir. 2020)..............................................................11, 15

*Khan v. Khan,*
    360 Fed. App'x 202, 203 (2d Cir. 2010) ................................................................17

*Lakonia Management Ltd. v. Meriweather,*
    106 F. Supp. 2d 540, 543 (S.D.N.Y. 2000)............................................................12

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,*
    274 F.3d 683, 686 (2d Cir.2001)............................................................................16

*Mann v. Sunshine Biscuit,*
    1998 WL 352534, at *1 (S.D.N.Y. Apr.23, 1998)...................................................16

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560, 567 (2d Cir. 1996)............................................................................17

**Page(s)**

## Cases

*Muhammad v. New York City Transit Auth.*,
    52 F. Supp. 3d 468, 478 (E.D.N.Y. 2014) ...............................................................................16

*Nechis v. Oxford Health Plans, Inc.*,
    421 F.3d 96, 100 (2d. Cir. 2005)..............................................................................................10

*Nelson v Lattner Enterprises of N.Y.*,
    2013 WL 3744051 (3rd Dep't., July 18, 2013)........................................................................14

*Nechis v. Oxford Health Plans, Inc.*,
    421 F.3d 96 (2d. Cir. 2005).......................................................................................................17

*Pampillonia v. RJR Nabisco, Inc.*,
    138 F.3d 459, 463 (2d Cir.1998)...............................................................................................13

*Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*,
    966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013)..............................................................................21

*Reidy v. Runyon*,
    971 F. Supp. 760, 764 (E.D.N.Y. 1997) ..................................................................................13

*Kogan v. Facebook, Inc.*,
    334 F.R.D. 393, 401–02 (S.D.N.Y. 2020) ...............................................................................21

*Selimovic v. S. Side Assocs. LLC*,
    2020 WL 2522117, at *4–5 (E.D.N.Y. May 18, 2020) ...........................................................19

*Spinale v. United States*,
    2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005...................................................................17

*Tromp v. City of New York*,
    168 F.3d 615, 617, 619–20 (2d Cir.1999).................................................................................13

*Vital v. Interfaith Med. Ctr.*,
    192 F. 3d 322 (2d Cir. 1999).....................................................................................................16

*WSP USA Corp. v. Marinello*,
    2013 WL 6704885, at *3 (S.D.N.Y. Dec. 19, 2013) ...............................................................12

## Statutes

42 U.S.C. § 2000e–5(e)(1)................................................................................................................16

## Other Authorities

Fed. R. Civ. P. 4...........................................................................................................................4, 21

4846-7996-4657.11 / 000000-0000

**Page(s)**

**Cases**

Fed. R. Civ. P. 5 ...................................................................................................................5, 23

Fed. R. Civ. P. 12(b)(1) .......................................................................................................11, 17

Fed. R. Civ. P. (b)(5) ...............................................................................................................17

Fed. R. Civ. P. 12(b)(4) ............................................................................................................17

Fed. R. Civ. P. 60 ....................................................................................................................20

4846-7996-4657.11 / 000000-0000

Defendant 666 Fifth Associates LLC ("666 Fifth"), through its' attorneys, Littler Mendelson, P.C., hereby submits this Memorandum of Law pursuant to Rules 4, 5, 12(b)(1), 12(b)(4), 12(b)(5), 12(b)(6) and 60 of the Federal Rules of Civil Procedure ("FRCP") in support of its Motion to Dismiss Plaintiff Anthony Solis' ("Plaintiff" or "Mr. Solis") Complaint.

## I. PRELIMINARY STATEMENT

This case must be dismissed because Mr. Solis settled and released all claims against all defendants in this action, including 666 Fifth, pursuant to a Confidential Settlement Agreement and General Release. Thus, the claims are moot and there is no case or controversy for the Court to hear. In addition, Mr. Solis never served 666 Fifth with the initial Complaint and the Summons he purportedly served with the Amended Complaint was defective. Mr. Solis never filed an EEOC charge against 666 Fifth, nor did he receive a Right to Sue Letter permitting him to bring federal claims of discrimination and retaliation against 666 Fifth. Finally, 666 Fifth did not employ Mr. Solis at the time of his request for a leave of absence or separation of employment from Guard Management Services Corporation.

Defendant 666 Fifth also moves the Court to reconsider Plaintiff's motion to serve 666 Fifth beyond the ninety (90) day window because Plaintiff did not show good cause for not timely serving 666 Fifth. In fact, the evidence suggests Plaintiff intentionally did not to bring 666 Fifth into this action until after he settled the case with the other defendants and the settlement checks cleared. Defendant also moves to dismiss the Amended Complaint because Plaintiff failed to follow the Court's Order which required him to serve "all parties" with his motion papers, a requirement also contained in FRCP 5(e). For these reasons, as set forth in more detail below, the Amended Complaint must be dismissed.

## II.     PROCEDURAL HISTORY

On July 6, 2020, Mr. Solis, a security guard formerly employed by Guard Management Services Corp. ("Guard Management"), initiated this action against 666 Fifth, Guard Management, Local 32BJ Service Employees International Union ("Local 32BJ"), and Patrick Busgitch alleging unlawful discrimination and retaliation due to his disability, failure to provide job-protected leave and violations of the Labor Management Relations Act.  *See* Complaint at ECF No. 6, attached as Exhibit A.[1]  Thereafter, the following transpired:

- On July 15, 2020 and July 17, 2020, Guard Management and Local 32BJ executed waivers of service.

- Guard Management and Local 32BJ engaged in settlement negotiations and mediation pursuant to the protocol in the Collective Bargaining Agreement that governed Mr. Solis' employment with Guard Management.

- On October 27, 2020, Mr. Solis' counsel filed a Notice of Settlement with the Court.  *See* Notice of Settlement ECF. No. 24, at Exhibit B.  In Mr. Solis' Notice of Settlement, he asked the Court to keep the case on its docket for sixty (60) days for the sole purpose of having an opportunity to file an application to reopen the matter "to assure that the Agreement is executed, and that the settlement payment has been cleared." *See Id*.  Mr. Solis did not ask the Court to keep the matter on its docket in the event he wanted to reopen the case against 666 Fifth.

---

[1] All exhibits are annexed to the Declaration of Lisa Griffith, dated July 13, 2020 ("Griffith Decl."), which is filed concurrently in support of 666 Fifth's Motion to Dismiss.  The Court may consider the exhibits annexed to the Griffith Declaration because these documents are public records that Plaintiff has incorporated in the Complaint.  *See e.g., Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998); *Lakonia Management Ltd. v. Meriweather,* 106 F. Supp. 2d 540, 543 (S.D.N.Y. 2000).

- On November 23, 2020, Mr. Solis filed a letter motion requesting that the Court reopen the case, not because the Agreement had not been executed, or because the settlement payments had not cleared, but to seek the exact same relief he settled a month prior but now against 666 Fifth. *See* Plaintiff's Letter Motion to reopen, ECF. No. 26, at Exhibit C.

- One day later, on November 24, 2020, the Court denied Mr. Solis' letter motion in an Order at ECF Docket No. 27 stating that:

> [s]ince the settlement is with less than all defendants, a motion under Rule 41 of the Federal Rules of Civil Procedure is required to dismiss the settling defendants and for appropriate relief against 666 Fifth Associates LLC.

*See* Court Docket No. 27, at Exhibit D.

- Mr. Solis did not file the motion required by the Court.

- On December 14, 2020, Mr. Solis, Guard Management, Mr. Bugitch, and Local 32BJ executed a Stipulation of Voluntary Dismissal.

- On December 18, 2020, Mr. Solis requested permission to serve 666 Fifth outside the 90-day window to effectuate service. *See,* Fed. R. Civ. P. 4(m). In his *ex parte* application, Plaintiff did not provide any good cause justification for not serving 666 Fifth within in the time required by FRCP 4 or for his four-month delay in requesting relief to serve 666 Fifth for being excessively late. Nor did Plaintiff provide a good cause explanation as to how it is even remotely possible that his claims against 666 Fifth survived the general release he entered into a month prior. *See* Plaintiff's Second Letter Motion to reopen ECF. No. 29, at Exhibit E.

- In response to his application, the Court in a December 22, 2020 Order, denied Mr. Solis' letter motion and directed him to proceed "on notice to all parties . . .

describe[ing] the claim, the settlement, and the claim remaining against the non-settling defendant 666 Fifth[].” *See* December 22, 2020 Order at ECF No. 32 at Exhibit D.

- Mr. Solis waited ***another five months*** and on May 2, 2021, he filed another unopposed *ex parte* motion to reopen the case against 666 Fifth, with a two-page memorandum of law which did not meet the requirements of the Court's December 22, 2020 Order.  In his motion, Mr. Solis requested an extension of time to serve 666 Fifth because the “settlement agreement between Plaintiff and the remaining Defendants in no way constitutes any prejudice to the 666 Fifth.”  *See* Plaintiff's Memorandum of Law at ECF No. 34 at Exhibit H.  666 Fifth was never served with the Notice of Motion and, therefore, did not have an opportunity to respond.  Mr. Solis offered no good cause rationale for failing to move to reopen to serve 666 Fifth in the ***five months*** that passed since he first requested permission to reopen the case against 666 Fifth.  Failing to serve a party with a motion is a violation of the Court Order, which required “notice to all parties” and also Fed. R. Civ. P. 5(a)(1)(D), which requires service of motions on all parties.

- On May 4, 2021, the Court granted Mr. Solis' unopposed *ex parte* motion for leave to file an Amended Complaint and serve the corporate defendant by June 20, 2021.  *See,* May 4, 2021 Court Order at ECF No. 35, Exhibit D.

- In May 2021, after more than **ten months** after filing the initial Complaint, Mr. Solis purportedly served 666 Fifth with an Amended Complaint.  *See* Affidavit of Service at ECF No. 37, at Exhibit I.  Incredibly, the Amended Complaint seeks duplicative relief from 666 Fifth on the same identical set of facts Mr. Solis resolved with Guard

-4-

Management six months prior.  *See* Amended Complaint, ECF No. 36, at Exhibit J. Mr. Solis filed a defunct affidavit of service, which lists the defendants he voluntarily dismissed, Guard Management, Local 32BJ and Mr. Busgitch as Defendants in the caption.  *See* Affidavit of Service, ECF No. 37, Exhibit I.

- 666 Fifth now moves for dismissal of the Complaint pursuant to FRCP Rules 4, 5, 12(b)(1), (4), (5), and (6) and for reconsideration of the Order granting the *ex parte* motion to reopen the case against 666 Fifth.

## III.    STATEMENT OF ALLEGATIONS AND PERTINENT FILINGS[2]

In his initial Complaint, Mr. Solis alleged, among other things, that Guard Management and 666 Fifth, as joint employers of Mr. Solis and Mr. Busgitch failed to provide him a reasonable accommodation, unlawfully interfered with his right to federal and state protected leave under the Family Medical Leave Act ("FMLA") and the Family First Coronavirus Recovery Act ("FFCRA"), and terminated his employment because of his disability or in retaliation for seeking leave.  *See* Exhibit A.  Mr. Solis also alleged that all Defendants violated the Labor Management Relations Act by failing to pay him wages according to the wage schedule set forth in the Collective Bargaining Agreement and terminated his employment without cause.  *See* Exhibit A. In October 2020, Mr. Solis resolved all of his claims in the Action and executed a Confidential Settlement  Agreement and General Release of All Claims (the "Agreement") with Guard Management and any co-employer or joint employer, Local 32BJ and Patrick Busgitch ("Mr. Busgitch").  *See* Exhibit B, *see also,* Exhibit G.  At no point in time did Mr. Solis serve 666 Fifth with the initial Complaint.  *See* Exhibit D.  Over seven months after resolving his claims, Mr. Solis

---

[2] The material allegations set forth in the Complaint are deemed to be true solely for purposes of the Court's consideration of the instant Motion to Dismiss.

filed, and purportedly served an Amended Complaint seeking duplicative relief from 666 Fifth

who he alleges is Guard Management's co-employer or joint employer on the same set of identical

facts he previously resolved in the Agreement.  *See* Exhibit J at ¶¶ 17-19.

Mr. Solis has released his claims against 666 Fifth.  The unequivocal language in the

Agreement states that Mr. Solis released any claims against Guard Management and its co-

employers and joint employers, which are identified as the "Released Parties."  *See* Exhibit G.[3]

Moreover, based on the representations made to the Court by Mr. Goldberg in his letter to the

Court dated December 21, 2020, Dkt. No. 30, submitted herewith as Exhibit G, Sections 7 and 9

of the Release Agreement preclude liability against 666 Fifth in this action:

7.    <u>Covenant Not to Sue</u>.

Subject to the rights enumerated in Paragraph 5, Plaintiff specifically covenants not
to file any suits, complaints, claims, or charges, either on Plaintiff's own behalf or
in any representative capacity, in any state or federal court or before any federal,
state, or local administrative agency, board, or governing body against the
***Defendants or the Released Parties, or any of them, on and/or for any and all of
the claims released by this Agreement***.

\* \* \*

9.    <u>Preclusive Effect of Agreement</u>.

Plaintiff acknowledges, understands, and agrees that this Agreement may be pled
as a complete bar to any action or suit before any court or administrative body with
respect to any lawsuit under federal, state, local, or other law relating to any
possible claim that existed or may have existed ***against the Defendants or the
Released Parties*** arising out of any event occurring from the beginning of time
through the Effective Date of this Agreement. Plaintiff further acknowledges and
agrees that Plaintiff had a full and fair opportunity, while employed at GMSC, to
make any reports and/or complaints relating to Plaintiff's experiences working at
GMSC, including but not limited to reports of workplace injury or illness and/or
any form of unlawful discrimination, harassment, retaliation or abuse of any kind.

*See Id.* (emphasis added).

---

[3] As 666 Fifth was not a party to the Agreement, it cannot include it as an Exhibit and respectfully requests that
Plaintiff make the Agreement available for the counsel's and the Court's inspection *in camera.*

In Section 4 and the whereas clause of the Agreement, Mr. Solis waived his rights to any

potential damages and effectuated an end to this action. Section 4 and the wherefore clause reads:

> PLAINTIFF FURTHER AGREES, EXCEPT TO ENFORCE THE TERMS OF
> THE AGREEMENT AND SUBJECT TO THE RIGHTS ENUMERATED IN
> PARAGRAPH 5, TO WAIVE ANY RIGHT TO RECOVER BACK PAY, FRONT
> PAY, LIQUIDATED DAMAGES, PUNITIVE DAMAGES, COMPENSATORY
> DAMAGES AND/OR ATTORNEYS' FEES, *IN ANY SUIT, COMPLAINT,*
> *CHARGE, OR OTHER PROCEEDING FILED BY PLAINTIFF OR ANYONE*
> *ELSE ON PLAINTIFF'S BEHALF*
>
> *   *   *
>
> WHEREAS, Plaintiff and the Defendants mutually desire to settle and terminate
> fully and finally any and all claims and any and all differences and disputes between
> them including, but not limited to, all matters related to Plaintiff's employment
> relationship with GMSC, and separation therefrom, the terms and conditions of
> Plaintiff's employment relationship with the Defendants, Plaintiff's relationship
> with the Union, *the Action*, and any other asserted or unasserted claims.

*See Id*. (emphasis supplied).

As soon as the ink dried on the Agreement, and the checks cleared, Mr. Solis immediately

sought another payday, a second bite at the apple, and on December 18, 2020, requested that the

case be reopened against 666 Fifth although he had never served 666 Fifth. *See* Exhibit C.  The

failure to timely serve 666 Fifth is nothing more than an ill-conceived attempt to elicit another

settlement on a set of identical facts.  The Court denied Mr. Solis' request and directed him to file

a motion, on notice to all parties, to reopen.  Mr. Solis did not file such motion.

Instead, some five months later, in May of 2021, Mr. Solis filed a motion and two-page

memorandum of law which did not contain any of the information the Court required, seeking to

reopen the case and serve 666 Fifth some 10 months after he filed the initial Complaint.  He did

not serve this motion on all of the parties, as directed by the Court.  Nonetheless, the Court granted

his motion.  On or about May 19, 2021, Mr. Solis filed an Amended Complaint and affidavit of

service.  The Amended Complaint exonerated Guard Management from any alleged unlawful

conduct, imputed liability solely onto 666 Fifth, and in paragraphs 17-19 alleged a joint employment relationship between Guard Management and 666 Fifth. *See* Exhibit J. The claims asserted in his Amended Complaint are identical to those in his Complaint filed in July 2020 (e.g., failure to provide a reasonable accommodation, unlawfully interfered with protected leave, and discrimination and retaliation based on his disability). *Cf.* Exhibit A and Exhibit J. A side-by-side comparison reveals the mechanics at play:

> Paragraph 15 of the Complaint alleges Mr. Solis:
>
> [n]ever received any paperwork from GMSC, 666 Fifth or Local 32BJ, and he was instead told that he was terminated again in early May 2020 for Plaintiff's failure to sign paperwork he had never received.

*See* Exhibit A, at ¶ 15.

> The Amended Complaint simply takes out reference to Guard Management (GMSC).

Paragraph 11 of the Amended Complaint alleges Mr. Solis:

> [n]ever received any paperwork from 666 Fifth or Local 32BJ, and he was instead told that he was terminated again in early May 2020, allegedly for Plaintiff's failure to sign the paperwork he never received.

*See* Exhibit J, at ¶ 11.

> Paragraph 32 of the Complaint alleges that:
>
> [t]hough Plaintiff informed GMSC and 666 Fifth of his serious health condition and provided a doctor's note, upon information and belief, GMSC and 666 Fifth failed to inform Plaintiff of his eligibility for unpaid job-protected leave under the FMLA as required by law, nor did GMSC or 666 Fifth consider giving Plaintiff a reasonable accommodation consisting of unpaid leave beyond the twelve (12) week period offered under the FMLA (and failed to engage in the interactive process to address his request).

*See* Exhibit A, at ¶ 32.

> In his Amended Complaint, Mr. Solis, again simply takes out reference to Guard Management. Paragraph 28 of the Amended Complaint alleges that:

[t]hough Plaintiff informed 666 Fifth of his serious health condition and provided a doctor's note, upon information and belief, 666 Fifth did not inform Plaintiff of his eligibility for unpaid job-protected leave under the FMLA as required by law, nor did 666 Fifth consider giving Plaintiff a reasonable accommodation consisting of unpaid leave beyond the twelve (12) week period offered under the FMLA (and failed to engage in the interactive process to address his request).

*See* Exhibit J, at ¶ 28.  In paragraph 35 of the Complaint, Mr. Solis alleges that:

[w]hen no one at GMSC or 666 Fifth got back to him, Plaintiff followed up about returning to work again after the holidays and specifically complained to Busgitch that he was getting the "run around" because he had requested and taken leave.

*See* Exhibit A, at ¶ 35.  In his Amended Complaint, Mr. Solis takes out reference to Guard Management and replaced Busgitch with "his supervisor."   Paragraph 31 of the Amended Complaint alleges that:

[w]hen no one at 666 Fifth got back to him, Plaintiff followed up about returning to work again after the holidays and specifically complained to his supervisor that he was getting the "run around" because he had requested and taken leave.

*See* Exhibit J, at ¶ 31.

It is nothing short of disingenuous to have claimed to complain to Mr. Busgitch, have Mr. Busgitch settle for consideration in return for a release, then turn around and claim to have complained to some unknown supervisor.  Moreover, Mr. Solis admits in his Amended Complaint that Guard Management and 666 Fifth are joint employers yet claims to have not released his claims under the Agreement.  *See Id*. at ¶¶ 17-19.  Paragraphs 17 – 19 of the Amended Complaint allege:

666 Fifth and Guard Management Service Corporation together are or were a single and/or joint employer under the law in that they share a common business purpose and ownership, maintain common control, oversight and direction over the operations of the work performed by Plaintiff, including payroll practices.

\*   \*   \*

> 666 Fifth and Guard Management Service Corporation each had substantial control of Plaintiff's working conditions and over the unlawful policies and practices alleged herein.
>
>                 *   *   *
>
> Defendant 666 Fifth directly paid Plaintiff wages for the same work Plaintiff performed for Guard Management Service Corporation.

*See Id.*

It bears repeating, in October 2020, Mr. Solis released his claims against Guard Management and any co-employer or joint employer. *See* Exhibit B and G. This alone is enough to dispose of this action, which he brings against 666 Fifth as a co-employer or joint employer of Guard Management.

Although the Settlement Agreement and General Release are sufficient to dismiss the Amended Complaint based on the allegations that 666 Fifth is a joint-employer of Guard Management, it is worth advising the Court that even if the Court would allow the Amended Complaint to proceed against 666 Fifth, it would be subject to dismissal because the facts are that by 2018, Mr. Solis did not work at 666 Fifth, was not employed by 666 Fifth, and was not on 666 Fifth's payroll. *See* Declaration of Armando Osmanovic, at Exhibit K. At all times relevant to the allegations in the Complaint, Mr. Solis was an employee of Guard Management. *See Id.*

As Mr. Solis admits in his Amended Complaint, he worked as a floater for several buildings. *See* Exhibit J at ¶ 23. What he leaves out of his Amended Complaint is that 666 Fifth had him removed from its building due to his poor behavior and outbursts, effective January 29, 2018. *See* Declaration of Armando Osmanovic and accompanying Exhibits at Exhibit K. Guard Management assigned him as a floater for the purpose of replacing security guards who were absent due to illness, vacation, or medical or personal leaves of absence. *See* Exhibit K at ¶ 3. At no point in time since January 29, 2018, did Guard Management assign him to 666 Fifth. *See Id.*

at ¶ 4.  No person from 666 Fifth had any role in Mr. Solis' employment or termination after he was removed from that building; rather, he was for all purposes solely an employee of Guard Management.  *See Id.*  Thus, even though 666 Fifth was released in the Settlement Agreement, on the facts it had nothing to do with Mr. Solis' employment at the time he requested a leave of absence and when he was separated from employment with Guard Management Services Corp.

## IV.   ARGUMENT

### A.   Mr. Solis' Amended Complaint Should Be Dismissed Under FRCP Rules 12(b)(1) and (6) For His Failure to State a Claim that Would Entitle Him to Relief.

Plaintiff's Amended Complaint should be dismissed pursuant to FRCP Rules 12(b) (1) and (6) because he fails to state a claim upon which relief can be granted against 666 Fifth.  FRCP Rule 12(b)(6) requires dismissal of a Complaint for failing to state a claim for relief when, from the face of the complaint, "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d. Cir. 2005)(citation omitted).  FRCP Rule 12(b)(1) requires dismissal of a Complaint if the court lacks subject matter jurisdiction because there is no live controversy where the claims are mooted by a Confidential Settlement Agreement and General Release of All Claims. *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,* 828 F. App'x 734, 736 (2d Cir. 2020).  The Amended Complaint must be dismissed because Mr. Solis has released his claims, agreed not to pursue these claims, or otherwise waived his right to damages precluding any entitlement to relief.

In deciding a motion brought pursuant to Rule 12(b)(1) and (6), the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in favor of the non-moving party.  *Chambers v. TimeWarner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  A court may look outside the pleading to documents that are public records or that Plaintiff has

-11-

incorporated into the Complaint.  *See e.g., Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998); *Lakonia Management Ltd. v. Meriweather,* 106 F. Supp. 2d 540, 543 (S.D.N.Y. 2000).

### 1.    Mr. Solis Released His Claims Against 666 Fifth Through a Settlement Agreement

Mr. Solis executed a Confidential Settlement Agreement and General Release (the "Agreement"). *See* Exhibits B and G.  In the Agreement, Mr. Solis unequivocally released his claims against Guard Management and any of its co-employers and joint employers.  *See* Exhibit G.  Mr. Solis alleges in his Amended Complaint that 666 Fifth is a joint employer of Guard Management. *See* Exhibit J at ¶¶ 17-19.

The Court may consider a prior Agreement and General Release entered into by plaintiff to be incorporated into the complaint by reference because it is "integral to [plaintiff's] ability to pursue his cause of action." *Dechberry v. New York City Fire Dep't,* 124 F. Supp. 3d 131, 135 (E.D.N.Y. 2015) (quoting *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004).  Moreover, "affirmative defenses, including the enforcement of a general release, are properly considered by a court as part of a motion to dismiss under Rule 12(b)(6)." *WSP USA Corp. v. Marinello,* 2013 WL 6704885, at *3 (S.D.N.Y. Dec. 19, 2013).

It is well established that "[o]nce an individual executes a valid settlement agreement, he cannot subsequently seek both the benefit of the agreement and the opportunity to pursue the claim he agreed to settle." *Reidy v. Runyon,* 971 F. Supp. 760, 764 (E.D.N.Y. 1997).  Indeed, "settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Tromp v. City of New York,* 465 F. App'x 50, 51 (2d Cir. 2012) (quoting *Collins v. Harrison–Bode,* 303 F.3d 429, 433 (2d Cir.2002)). "Where the language of [a] release is clear, effect must be given to the intent of the parties as indicated by the language employed." *Id.*

(quoting *Shklovskiy v. Khan*, 273 A.D.2d 371, 709 N.Y.S.2d 208, 209 (2d Dep't 2000)) (internal quotations omitted). "Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 463 (2d Cir.1998) (affirming dismissal where release that was unambiguous, and was knowingly and voluntarily entered into, barred plaintiff from bringing an action). Courts in this Circuit have consistently barred claims where a plaintiff enters into a settlement, executes a general release, and then brings an additional lawsuit alleging similar claims that could have been alleged in the prior settled action. *Dechberry,* 124 F. Supp. 3d at 142 (E.D.N.Y. 2015).

Here, Mr. Solis entered into an Agreement with Guard Management and released his claims in this action against it and any co-employers or joint employers, the "Released Parties." The Agreement easily disposes of this action where:

A. in Section 7 of the Agreement Mr. Solis agreed not to file any suit against the Released Parties, which according to the allegations in the Amended Complaint, includes 666 Fifth as a joint employer;

B. in Section 9 of the Agreement, the parties agreed that the Agreement "may be pled as a complete bar to any action . . . relating to any possible claim that existed or may have existed against the Defendants or the Released Parties arising out of any event occurring from the beginning of time through the Effective Date of this Agreement;"

C. in Section 4 of the Agreement, Mr. Solis waived his rights to any potential damages for back pay, front pay, liquidated damages, punitive damages, and/or attorneys' fees;

D.  in the Whereas Clause of the Agreement, the parties expressed their "desire to settle and terminate fully and finally any and all claims and any and all differences and disputes between them including, but not limited to, all matters related to Plaintiff's employment relationship with GMSC, and separation therefrom."

*See* Exhibit G.

Here, Mr. Solis was not alone in resolving his claims.  He was represented by counsel, the same counsel who filed the Amended Complaint, and was fully informed as to the Agreement's terms, and had adequate time to consider the Agreement before signing it.  Thus, Mr. Solis released his claims voluntarily and with knowledge of the terms rendering the Agreement enforceable. *Hughes v. Lillian Goldman Family, LLC,* 153 F.Supp.2d 435, 444-46 (S.D.N.Y. 2001) (granting motion to dismiss because claims barred by NYSDHR conciliation agreement); *Dechberry* 124 F.Supp.3d at 142 (E.D.N.Y. 2015) ("Courts in this Circuit have consistently barred claims where a plaintiff enters into a settlement, executes a general release, and then brings an additional lawsuit alleging similar claims that could have been alleged in the prior settled action."); *Nelson v Lattner Enterprises of N.Y.,* 2013 WL 3744051 (3rd Dep't., July 18, 2013) ("Therefore, consistent with the public policy favoring enforcement of settlements, the release agreement that plaintiff signed should be enforced according to its terms, and plaintiff's claims were properly dismissed") (internal citations omitted.).

Because Mr. Solis' Amended Complaint asserts absolutely no additional facts or claims not previously settled in October 2020 against Guard Management he cannot now bring an identical cause of action against who he alleges to be Guard Management's joint employer, 666 Fifth.  Indeed, should this matter proceed, Guard Management will inevitably be involved in this litigation as Mr. Solis alleges is 666 Fifth's joint employer nullifying the release and consideration

-14-

provided under the Agreement.  For this reason alone, Mr. Solis' Amended Complaint fails as a matter of law.

> **2.**     **The Claims Asserted in Mr. Solis' Amended Complaint Are Moot and Should Be Dismissed**

This action is moot by virtue of the Confidential Settlement Agreement of All Claims.  A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when the parties lack a legally cognizable interest in the outcome." *Fox v. Bd. of Trs. of State Univ. of N.Y.,* 42 F.3d 135, 140 (2d Cir. 1994) (internal quotation marks omitted). "Because a settlement resolves the live controversy between parties, we have recognized that a settlement agreement may moot a party's subsequent claims." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,* 828 F. App'x 734, 736 (2d Cir. 2020).

Here, Mr. Solis not only released his claims against Guard Management and its co-employers and joint employers which extend to 666 Fifth, but also waived his right to damages to the claims he asserted in his Amended Complaint.  The fact that Mr. Solis cannot recover for the alleged actions, moots his claims.  There is no live controversy between the parties, no cognizable claim for relief to be adjudicated by the Court and, therefore, the Amended Complaint must be dismissed.

> **3.**     **Mr. Solis Failed to Exhaust His Administrative Remedies as He Did Not Receive a Right to Sue from the EEOC Against 666 Fifth**

Although the Amended Complaint should be dismissed as moot and failing to state a claim for relief, alternatively, Mr. Solis' claims for disability based discrimination and retaliation under the Americans with Disabilities Act in the Amended Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) because he never received a Right to Sue Notice against 666 Fifth.  While discovery is often permitted prior to ruling on a motion for summary judgment, it is appropriate to consider a Fed. R. Civ. P. 12(b)(6) motion based on a failure to exhaust at the pleading stage

-15-

because "[d]iscovery is not necessary . . . when the 'the facts regarding [p]laintiff's efforts at exhaustion are not disputed, and it does not appear that any amount of discovery would change the outcome.'" *Gottesfeld v. Anderson,* 2020 WL 1082590, at *7 (S.D.N.Y. Mar. 6, 2020) (quoting *Parra v. Wright,* 2013 WL 6993383 at *7 (W.D.N.Y. 2013)).

"It is well established that a plaintiff must file a charge of discrimination with the EEOC and obtain a right to sue letter from the EEOC before proceeding in federal district court [with a Title VII or ADA claim]." *Garcia v. Coca–Cola Bottling Co. of New York,* 1998 WL 151032, at *2 (S.D.N.Y. Mar.31, 1998).  Indeed, exhaustion of administrative remedies through the EEOC is an essential element of the [ADA's] statutory scheme[ ] and, as such, a precondition to bringing [an ADA claim] in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001).  A further requisite to filing suit under Title VII or ADA is that the plaintiff name the defendant in a charge filed with the EEOC. *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 617, 619–20 (2d Cir.1999); *Mann v. Sunshine Biscuit,* 1998 WL 352534, at *1 (S.D.N.Y. Apr.23, 1998).  Moreover, a plaintiff must file a charge with the EEOC within 300 days after the alleged unlawful employment action. 42 U.S.C. § 2000e–5(e)(1).  Failure to file an administrative charge with the EEOC within the 300 days extinguishes the claim and prohibits recovery.  *Muhammad v. New York City Transit Auth.,* 52 F. Supp. 3d 468, 478 (E.D.N.Y. 2014).

Here, Mr. Solis never filed a Charge with the EEOC against 666 Fifth.  *See* Notice of Right to sue at Exhibit L.  The right to sue letter only includes Guard Management.  *Id.*  Moreover, provided that the last alleged unlawful discriminatory action occurred May 2020 over a year ago, his federal ADA claims are now time-barred.[4]

---

[4]  It is telling that Plaintiff did not bring a charge of discrimination against 666 Fifth and only against Guard Management Services, his sole employer at the time of his request for leave and separation from employment.

**B.    The Amended Complaint Should Be Dismissed Under FRCP Rules 4,
12(b)(4) and 12(b)(5) Because He Did Not Serve 666 Fifth with Sufficient
Process**

Mr. Solis never  served 666 Fifth with sufficient process, as the affidavit he filed in support

of his argument that he served 666 Fifth with the Amended Complaint shows that what he

"attempted" to serve was insufficient.  Moreover, Mr. Solis never served the initial Complaint.  On

a Rule 12(b)(4) and (5) motion to dismiss, the plaintiff bears the burden of establishing that process

of service was sufficient.  *Khan v. Khan,* 360 Fed. App'x 202, 203 (2d Cir. 2010). "Similar to a

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction," in

considering a motion to dismiss pursuant to 12(b)(4) or 12(b)(5) for insufficient process and

insufficient service of process, a Court must look to matters outside the complaint to determine

whether it has jurisdiction*. Darden v. DaimlerChrysler N. Am. Holding Corp.,* 191 F. Supp. 2d

382, 387 (S.D.N.Y. 2002).  To make "a *prima facie* showing," the plaintiff must aver facts that,

"if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996).  For instance, a

properly filed affidavit of service by a plaintiff is *prima facie* evidence that service was properly

effectuated.  *Ahluwalia v. St. George's Univ.,* LLC, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014)

(emphasis added).  However, conclusory statements by a plaintiff are insufficient to "overcome a

defendant's sworn affidavit that he was not served." *Darden,* 191 F. Supp. 2d 382 at 387 (S.D.N.Y.

2002).

In or about May of 2021, Mr. Solis "served" 666 Fifth with a Summons and an Amended

Complaint through its registered agent for service.  However, the Summons served on 666 Fifth

was the defunct Summons issued by the Court with the initial Complaint, which lists all of the

Defendants initially sued, and is dated July 8, 2020.  *See* Exhibit M. The Summons dated July 8,

2020 was allegedly served on 666 Fifth's registered agent on or about May 14, 2021.  According

-17-

to FRCP 4, the Summons must identify all Defendants to the Action and that any amendments to the Summons may be permitted *by the Court*. Rule 4(b) provides that "after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served." Fed. R. Civ. P. 4(b). If an error in summons results in prejudice to defendant or demonstrates flagrant disregard of rules, service of process will be considered invalid and a court need not allow an amendment for plaintiff to cure defect. *DeLuca v. AccessIT Grp., Inc.,* 695 F. Supp. 2d 54 (S.D.N.Y. 2010). Mr. Solis admits that he never served 666 Fifth with the initial Complaint issued by the Clerk and there is no indication on the docket that Mr. Solis ever sought or received an amended summons from the Clerk for service of the Amended Complaint. This mistake is not harmless and is a flagrant disregard of the rules. By serving the wrong Summons, Mr. Solis misrepresented the status of this case by leading 666 Fifth to believe that it was not the only Defendant in the case, whereas he had actually entered into a settlement agreement and dismissed the case against Guard Management, 32BJ and Mr. Busgitch.

In this regard, the Amended Complaint should be dismissed for the several defects in Mr. Solis' service of process (not serving the initial complaint) and because of defects in the summons itself.

### C.   Mr. Solis Was Not 666 Fifth's Employee During the Relevant Period

At no point in time since January 2018, did Guard Management assign Mr. Solis to work at 666 Fifth. *See* Exhibit K. No person from 666 Fifth had any role in Mr. Solis' employment or termination, rather, he was for all purposes solely an employee of Guard Management. *See Id*. A plaintiff should be able to point to some evidence to establish his employment relationship with the defendant. *See Selimovic v. S. Side Assocs. LLC*, 2020 WL 2522117, at *4–5 (E.D.N.Y. May

-18-

18, 2020).  In *Selimovic*, the court held defendants put forth sufficient evidence to establish that it was not plaintiff's employer and that evidence concerning a plaintiff's employer would be precisely the sort of evidence the Court can reasonably expect would be available to the plaintiff prior to discovery.  *Id.*

The only evidence Mr. Solis points to in his feeble effort to establish that 666 Fifth was a joint employer of Mr. Solis are paystubs and W-2 forms from 2017 and 2018 purportedly from 666 Fifth.  Irrespective of this, all that these paystubs show is that 666 Fifth could have paid Mr. Solis through its payroll in 2017 and 2018.  However, the unlawful actions alleged to have occurred against Mr. Solis began in 2019. *See* Exhibit J at ¶¶ 30, 45, 54, and 64.  Indeed, Mr. Solis was diagnosed with Type I diabetes in June 2019 and took job protected leave until January 2020 when he was notified of his termination, which he disputed and his termination was nullified. *Id.* at ¶¶ 36 and 54.  Mr. Solis then went out again on leave, due to the COVID-19 virus, and later told (by some unknown person) he did not complete paperwork for his reinstatement in early May 2020. *Id.* at ¶¶ 9 and 11.

Critically missing is any evidence that 666 Fifth had anything to do with Mr. Solis' disability-based discrimination and retaliation claims in 2019 and 2020.  Mr. Solis does not allege that he suffered any unlawful discrimination in 2017 or 2018 when he purportedly received pay through 666 Fifth.  No one employed by 666 Fifth had any role in Mr. Solis' employment in 2019 or 2020 or his termination, rather, he was for all purposes solely an employee of Guard Management. *See* Exhibit K.

Accordingly, the Complaint must be dismissed because, contrary to Mr. Solis' allegations of a joint employment relationship, 666 Fifth did not employ Mr. Solis at the time of his request for leave or the separation of his employment.

**D.** **Mr. Solis' Ten-Month Delay in Requesting Relief to Serve 666 Fifth and Filing a Duplicative Action After Filing the Initial Complaint and Resolving the Action Warrants the Court's Reconsideration of its Order Granting Leave to Serve the Amended Complaint**

Mr. Solis did not comply with this Court's Order in his motion to reopen the case to serve 666 Fifth because he failed to serve all parties with the motion and he failed to provide details of the settlement, why the settlement did not extinguish his claims against 666 Fifth, and failed to provide "good cause" for his 10-month delay in serving 666 Fifth (including the five month delay in time from when the Court directed him to file a motion in December 2020 and when he actually filed a "motion" in May of 2021). Mr. Solis then filed an amended complaint with identical claims he already settled and released. Mr. Solis' actions warrant reconsideration of this Court's May 4, 2021 Order granting Mr. Solis' *ex parte* motion for leave to file an Amended Complaint. On motion and just terms, the court may relieve a party . . . from a . . . order [due to] misconduct by an opposing party. Fed. R. Civ. P. 60. A motion under Rule 60(b) must be made within a reasonable time--and [if based on misconduct] . . . .no more than a year after the entry of the judgment or order or the date of the proceeding. Fed. R. Civ. P. 60. Mr. Solis never complied with this Court's November 24, 2020 and December 22, 2020 Orders directing him to describe the claim, the settlement, and the claim remaining against the non-settling defendant 666 Fifth. Instead he simply filed a memorandum of law that amounts to nothing more than the "settlement agreement between Plaintiff and the remaining Defendants in no way constitutes any prejudice to the 666 Fifth." *See* Plaintiff's Memorandum of Law at ECF No. 34 at Exhibit H. Mr. Solis did not serve his motion on 666 Fifth, as required by the Court's Order. 666 Fifth was never able to oppose the motion. A review of the Amended Complaint likewise does not describe any *remaining* claims against 666 Fifth because it is simply a reiteration of all his original claims for relief which he has settled, but only imposes liability onto 666 Fifth. The Amended Complaint is nothing more

than a disingenuous attempt to obtain another settlement on the same set of facts. Mr. Solis'

misconduct by not adhering to this Court's Order calls for reconsideration of the May 4, 2021

Order granting Mr. Solis leave to file and serve the Amended Complaint and an Order denying

Mr. Solis' motion.

Mr. Solis also never showed "good cause" for his 10-month failure to effectuate service.

Good cause to excuse a failure to effectuate service exists only in "exceptional circumstances

where the plaintiff's failure to serve process in a timely manner was the result of circumstances

beyond its control." *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.,* 966 F. Supp. 2d 282, 306

(S.D.N.Y. 2013). A "party seeking a good cause extension bears a heavy burden of proof," which

is not satisfied by "a showing that the plaintiff encountered some unanticipated difficulty." *Spinale*

*v. United States,* 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005). An attorney's inadvertence,

neglect, or mistake is not good cause. *See, Kogan v. Facebook, Inc.,* 334 F.R.D. 393, 401–02

(S.D.N.Y. 2020).

Mr. Solis did not even attempt to serve 666 Fifth with the initial summons and complaint

for some 10 months after he filed them. Mr. Solis does not purport to have had difficulty in serving

666 Fifth. On December 18, 2020, Mr. Solis requested permission to serve 666 Fifth outside the

90-day window to effectuate service. *See,* Fed. R. Civ. P. 4(m). In his *ex parte* application,

Plaintiff did not provide any good cause justification for not serving 666 Fifth within in the time

required by FRCP 4 or for his five-month delay in requesting relief to serve 666 Fifth excessively

late. Nor did Plaintiff provide a good cause explanation as to how it is even remotely possible that

his claims against 666 Fifth survived the general release he entered into a month prior. *See*

Plaintiff's Second Letter Motion to reopen ECF. No. 29, at Exhibit E. Instead, Mr. Solis sought

to reopen the case on the grounds that Guard Management led him to "believe that 666 Fifth would

waive service by and through Mr. Goldberg." *See* Plaintiff's Reply Letter at ECF. No. 31, Exhibit F; *see also* Guard Management letter in Opposition, ECF No. 30, Exhibit G.  Mr. Solis' position is unsound.  The July 17, 2020 email which "led" him to believe Mr. Goldberg would accept service reads: "By the way, I am not sure that we will be representing 666 Fifth Associates LLC, but will let you know on Monday." *See,* Exhibit F at page 5.  Nothing in Mr. Goldberg's email suggested that Plaintiff should have held off on serving 666 Fifth *for ten months*.  Moreover, a simple search in the New York State Department of State's database quickly reveals the registered agent for service on 666 Fifth.  https://apps.dos.ny.gov/publicInquiry/EntityDisplay.

Critically missing from Mr. Solis' letter application to reopen is any justification whatsoever for not serving 666 Fifth from July 17, 2020 to December 18, 2020. *See Id.*  Mr. Solis and his attorney were all the while actively involved in this case.  It is inconceivable that Mr. Solis did not serve 666 Fifth during the three months the parties negotiated a resolution or during the one month he waited for his settlement checks to clear.  In response to his application to reopen the case against 666 Fifth, the Court in a December 22, 2020 Order, denied Mr. Solis' letter motion and directed him to proceed "on notice to all parties . . . describe[ing] the claim, the settlement, and the claim remaining against the non-settling defendant 666 Fifth[]." *See* December 22, 2020 Order at ECF No. 32 at Exhibit D.

Mr. Solis did not comply with the Court's Order.  Rather, Mr. Solis waited *another five months* and on May 2, 2021, he filed another unopposed *ex parte* motion to reopen the case against 666 Fifth, with a two-page memorandum of law which did not meet the requirements of the Court's December 22, 2020 Order. *See,* Exhibit H.  In his motion, Mr. Solis requested an extension of time to serve 666 Fifth because the "settlement agreement between Plaintiff and the remaining Defendants in no way constitutes any prejudice to the 666 Fifth." *See Id.* at page 3.  Of course,

666 Fifth was prejudiced by not being timely served because although it was released in the agreement, it was not a party to the settlement negotiations and 666 Fifth was not provided an opportunity to respond to Mr. Solis application.  666 Fifth was also prejudiced by allowing Plaintiff to reopen his case against 666 Fifth some 10 months after the initial complaint was filed.  666 Fifth is further prejudiced by having to make the instant motion.  Mr. Solis offered no good cause rationale for failing to serve 666 Fifth in the **ten months** that passed since he filed his initial complaint or the **five months** that passed since he first requested permission to reopen the case against 666 Fifth.  Failing to serve a party with a motion is a violation of the Court Order, which required "notice to all parties" and also Fed. R. Civ. P. 5(a)(1)(D), which requires service of motions on all parties.  On May 4, 2021, the Court granted Mr. Solis's unopposed *ex parte* motion which he did not serve on all parties, for leave to file an Amended Complaint and serve the corporate defendant by June 20, 2021. *See,* May 4, 2021 Court Order at ECF No. 35, Exhibit D.

Incredibly, the Amended Complaint seeks duplicative relief from 666 Fifth on the same identical set of facts Mr. Solis resolved with Guard Management six months prior.  *See* Amended Complaint, ECF No. 36, at Exhibit J.  Mr. Solis filed a defunct affidavit of service, which lists the defendants he voluntarily dismissed, Guard Management, Local 32BJ and Mr. Busgitch as Defendants in the caption.  *See* Affidavit of Service, ECF No. 37, Exhibit I.

Accordingly, the Court should reconsider its Order granting Plaintiff permission to reopen this case against 666 Fifth some ten months after he filed the initial complaint and deny Plaintiff's motion due to Plaintiff's misconduct and/or misrepresentations, which motion was filed with the Court without notice to 666 Fifth in violation of the Court's Order and FRCP 5.

## V.    CONCLUSION

For the foregoing reasons, 666 Fifth respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Amended Complaint, in its entirety, pursuant to Rules 4, 5, 12(b)(1), (4), (5)

and (6) of the Federal Rules of Civil Procedure, and award it costs and attorneys' fees associated

with having to bring this Motion, as well as any further relief the Court deems just and proper.

Date:   July 13, 2021
        Melville, New York

/s/Lisa M. Griffith
Lisa M. Griffith
Keegan B. Sapp
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305 Melville,
New York 11747
(631) 247-4700

Attorneys for Defendant

-24-

4846-7996-4657.11 / 000000-0000